And now we'll move to United States v. Pastore and Delegati. All right, Mr. Anderson, you've reserved one minute for rebuttal, but I just want to make sure I've got down sort of what the total time is. So you're going to do two minutes now and one minute rebuttal? Correct. All right. And Ms. Shevitz, you're going to do—I'm not good at math. How much are you going to do on your main argument? Six and three rebuttal? Total of nine. You're doing nine. He's doing three total. Got it. Okay. Thanks. You may proceed, Mr. Anderson. Thanks. Thank you, Your Honor. May it please the Court, I'd like to begin with our challenge to the conviction under section 924C. The Seventh County indictment charged Delegati with using and carrying a firearm during and relation to counts 1, 2, 3, and 4. Now there was no verdict form in this case, and so there's no way of knowing which one of those underlying crimes of violence formed the basis for the jury's verdict. So your view is unless all of them are crimes of violence, then you'd be entitled to a new trial? Correct. If the district court erroneously instructed the jury that any one of those four counts qualified as a crime of violence, then the count 7 conviction should be reversed. And as the Supreme Court recently decided in the United States against Davis, the section 924C.3.B. residual clause is unconstitutional, which led to this Court's August 30th decision in the United States against Barrett that a conspiracy to commit robbery can no longer qualify as a crime of violence. So here in this case, counts 1, 2, and 4 were all conspiracy crimes. So under Davis and Barrett, a reversal is required on that basis alone. Remind me again what 4 was. 1 was the attempted murder. Were both of them the attempted murder? No. Count 3 only was the attempted murder. Count 1 was the RICO conspiracy. Right. Count 2 was murder conspiracy. And I'm blanking on count 4. Count 4 is conspiracy to commit murder for hire. Thank you very much, Your Honor. Yes. Count 3 was attempted murder. And as we noted in our principal brief, which the government did not respond to, under New York law, which is the law that this Court looks to in determining whether there was an attempted murder under New York law, that can be committed either without any violent actions whatsoever, and so it wouldn't qualify under the Forest Clause. And even if that had been a full-on murder, we don't know which of the subsections of that divisible statute were charged because it wasn't specified in the indictment. And anyway, the New York courts, the appellate courts have held that those crimes can be committed by way of omissions, which is different than the distinction between direct and indirect force. Have you shown, and do you have to show, that what you just said is true for attempt as well? That is to say, is there attempted depraved indifference under New York law? Attempted omission. I'm not sure what that means. No, I'm sorry. I'm just saying with an attempt crime under New York law, it can be committed by way of any substantial step towards a crime which involves no violence whatsoever. So that fails under the Forest Clause. But even if it had not been attempt, even if it had been murder, under this indictment, which we don't know which subsection of the 12525 statute was actually charged, it's the fact that New York law allows omissions to be the way in which you prove a murder crime. Those are just multiple different ways under which count three, even if that was the only count that had been charged, the only one that had been presented to the jury, would not have satisfied the Forest Clause under section 924C3A. I see that my time is up. Is it the same gun for each of these counts, or it's different guns? The same gun. The same gun. So if there's a conviction for any one of those is a crime of violence, the jury found that the crime was committed. If the crime is a crime of violence, then the jury necessarily found that he possessed the gun. No, because of the fact that there was no special verdict. We don't even know if the jury considered all four of these underlying crimes of violence. They could have been, for all we know, during their deliberations said, okay, there was a gun used in connection with the Rico conspiracy, therefore we can check this and move on. There was nothing in the district court's jury instructions that required them to consider those underlying crimes of violence. But what is the evidence as to the possession of the gun by Mr. Delegati? Is it just that he procured a gun for the attempted murder? Correct. So there's no other evidence about him possessing a gun, right? Correct. All right. Well, it's not just the procurement, right? He handed the gun. Yeah. There was surveillance that he handed it to the Duke, I guess it was. Correct. But again, we don't know whether the jury even considered whether there was 924 connected to Count III specifically. But they convicted on Count III specifically, right? They convicted on Count III specifically, but we don't know whether they, in their deliberations, tied the 924C conviction to Count III. And the other three counts, again, were all conspiracy counts. And so under Davis and Barrett, conviction would be required under Count VII. And was the – was this requested in the district court, a special verdict? Not that I'm aware of, Your Honor. No. We're viewing for plain error here. No, Your Honor, because we're not – we're not alleging that the lack of a special verdict form was itself an error, but that does not facilitate appellate review. And now that since our briefs were filed, the Supreme Court has issued this decision which affects Counts I, II, and IV, at least as to Count VII, there should be a reversal on that basis. Thank you, Your Honor. Thank you, Mr. Anderson. Ms. Chevins. Good morning. I represent Stephen Pastore, who was sentenced unfairly in many different ways. Mr. Pastore was not tried with my co-appellant. He pled guilty. He pled guilty. He did not have any opportunity to cross-examine any of the witnesses. And because of what happened at sentencing, he didn't have an opportunity to cross-examine anyone. He challenged at every step of the way the government's assertion that he was a soldier in the Genovese organized crime family. And never were we allowed to challenge that by evidence that we offered that would have shown that the government's expert did not consider him an organized crime soldier. But what about that makes you think that the sentence was infected by it? Judge Forrest indicated that she wasn't going to put any stock in that, right? No. That's the point. Judge Forrest said that she would consider everything except the fact that Pastore was in the hospital, which the PSR did not confirm. So she disregarded paragraph 83, she said, but regarded everything else by way of important background. And the question is, how can it become background but not have been allowed to be challenged? This was not a minimal challenge. This was a challenge to the very notion that this man was an organized crime soldier as opposed to a temporary replacement for a guy who supervised some runners. That's what the evidence shows, which is in our brief. But besides that, Judge Forrest made findings about forfeiture and the quantity of forfeiture with the statement that somehow he managed to get the money. There was no evidence that he got the money. There was no evidence he got any money. The record shows that the government posited at first that he would get money in white envelopes and that they would show that at a hearing. There was a letter that they sent in June 2018 that said they would be calling witnesses to show that, which was the wiretap declarance. Then later, they called no one, and there was nobody, no agent, no surveillance person, no witness, no anybody who said that Stephen Pastore actually received any money, let alone proceeds, which I would like to talk about in a minute, what proceeds are. So in essence, Judge Forrest threw up her hands and said, well, I think he got the money, I don't trust his financial records, and all sorts of things that were not based on evidence, and found that he must have gotten the money somewhere, and so she was going to impose forfeiture as if he got the money and as if the government's proposed amount were proven. It's our suggestion that this was not proven by a preponderance of the evidence. It wouldn't have even stood in a civil case, and moreover, we asked for a jury trial on forfeiture, not only under the Constitution, but under the Federal rule. Now, I suggest the law in this circuit is you don't get a jury trial on that, right? At least pre-Honeycutt, right? No. Rule 32 says that there's a jury can decide what's forfeitable proceeds, not if there's property that is forfeitable. And proceeds, and maybe I should say this now when we're talking about proceeds, I looked recently at a September 2019 Department of Justice Journal of Federal Law and Policy that's all about forfeiture after Honeycutt and how to trace, and the tracing, yes, it's still required, and that notwithstanding the government's brief that says you don't have to hand the actual bills paid by the better to the defendant, but yes, you have to trace them. They don't have to be the actual bills, but you have to trace them, money paid to the better from the transaction, from the unlawful transaction. And let's say the runner, instead of putting them in his pocket and using them, went out and bought a washing machine with that money. Then, according to the law, according to the Department of Justice, according to everybody who's thinking about forfeiture in its historical sense, which Honeycutt resurrected, that money is not traceable proceeds to the offense. It may be money turned over to a defendant, which was not shown here. It's money turned over, but it's not money that was traceable to the offense at issue. And that's what the tracing laws apply or require. I can tell you the site. Excuse me. Is that my water? This is at justice.gov slash USAO slash page slash filed slash 1205051 slash download. And there is a page 77. There's an article specifically about tracing, which says that it doesn't matter usually in life what dollar bill is used for what, but in an asset forfeiture, it has to matter, because the government is obligated to trace from the offense, from the commission of the offense. So Judge Forrest didn't find any of that. She did not agree that tracing was required. The government quoted from page 53 of the government's brief, and the government states, there is no requirement the actual bills handed from a bettor to a runner be the same bills then provided to the defendant, which I agree. It doesn't have to be the same bills, but you have to the government has to show that those bills did not go into some other asset, which then becomes the traceable asset. Tracing is still required. It was required before it got kind of confused when the government started charging RICO forfeitures in the 80s, and now it's come back to Honeycutt, which talks about tainted unless you trace them back to the source of the wrongdoing, which here is the bettor's payment for illegal gambling debt payments. Otherwise, it's a payment of gambling debt, which is another kind of payment, but that is in traceable proceeds. And I ---- Good morning. May it please the Court. My name is Jordan Esses. I represent the United States, and I also represented the United States below. So I want to start first with Salvador Delgado's argument that the 924C doesn't stand anymore after Davis. Now, the government agrees that three of the four predicates of the 924C are no longer good, but there was also an attempted murder. Three of the four. Three of the four. So not the conspiracy, neither the conspiracies? That's correct. So we have ---- There were three conspiracies that were predicates, Your Honor. None of the conspiracies. There was racketeering conspiracy, conspiracy to commit murder for hire, and there was also conspiracy to commit murder in aid of racketeering. Is that 1, 3, and 4? 1, 2, and 4? Yes, Your Honor. So the one that's left is attempted murder in aid of racketeering, and there was actually a special verdict form here where the jury was asked in connection with the 924C to indicate whether the government proved the firearm in connection with each of those four predicates. It's 8A451 of the appendix. And it shows that for each of the four predicates, the jury found that the government had proven that the gun was connected to it. So the Court can be confident that the jury found this in connection with the attempted murder in aid of racketeering. Now, as to the cases cited by Delegati to suggest that an attempted murder does not fall under the force clause, we would submit that none of those cases show that an attempted murder cannot involve the attempted use of force. Well, murder ---- let's start with murder. Murder would, it seemed to me, involve the attempted use of force as a general matter. Yes, Your Honor. We completely agree with that. We think it would. The one case they cite is they cite a felony murder case where in the State, where in the course of, I believe it's an escape, a police officer falls and dies. But Your Honors don't even have to consider felony murder or anything in that regard because there simply can't be an attempted felony murder. That's not possible. And there's New York State law on that in particular. There's a case, People v. Hendricks, 56 AD 2D580, where the Second Department specifically says there cannot be attempted felony murder under New York law. This Court in a summary order has also found that attempted murder does by its nature involve the attempted use of force in the Prati case. So we submit that the defense arguments in that regard should be rejected. Now, unless there are any more questions on that, I will turn to the arguments of Defendant Stephen Pastore regarding forfeiture. Now, first, Judge Forrest carefully considered the evidence submitted by the government in connection with the forfeiture hearing. The reason we didn't call a witness is because we largely relied on wire calls to prove forfeiture, and defense counsel did not object to the authenticity of those wire calls. We were prepared to call a detective to authenticate them, but they said there was no need for that. So we simply submitted the wire calls and also surveillance reports to corroborate that the meetings with Defendant Stephen Pastore occurred. Now, with those wire calls, the government was careful to submit calls that showed or that discussed runners specifically making payments to Stephen Pastore in connection with the gambling operation. Now, these calls were explicit. For instance, one of the transcripts of the calls is in our appendix. It's Government Exhibit 12-T, where the runner specifically referenced a $34,700 payment to Mr. Pastore. And this call significantly was made immediately after a meeting where Pastore met up with that runner. So the fact that the meeting occurred and then there's a call right after where he says, I paid him $34,700, we submit is very significant evidence that there was in fact a payment of $34,700 to Mr. Pastore. And Judge Forrest was well within reason to find by preponderance of the evidence that that payment in fact occurred. Now, as to the government's total figure for forfeiture was $125,000. And as shown in our supplemental appendix, that number was completely supported by all of these wire calls where runners are specifically talking about payments they made to Pastore. Wouldn't that number show gross rather than net proceeds? That's correct, Your Honor. And is the law under Liza Industries that profits or proceeds are gross rather than net profits? So the Second Circuit has not specifically decided whether it's gross as opposed to net. Other circuits have decided that it was gross. There is one circuit, I believe the Seventh Circuit in the Masters case, that calculated it with net. But the vast majority of the circuits have found that under the RICO forfeiture statute, it is gross proceeds. And that's because under RICO, forfeiture was intended to be a weapon to really come as another way to combat these racketeering acts and these efforts to make money through illegal activity. Now, in the Liza case or in the Second Circuit, they did calculate a setback based on there was a deduction in that case, but there was no argument in that case that it should be gross rather than net. They just accepted that. Doesn't it say that it's gross rather than net profits in the decision? I'm not sure, Your Honor. I'd have to have it handled. In any event, it is clearly the mode of analysis accepted by the Court there. Yes, Your Honor. And as I said, that's consistent with the purposes of the RICO forfeiture statute. And in any event here, Judge Forrest was not presented with any evidence of payments that Pastore was making to gamblers for which she could even calculate net profits. And that's not shifting the burden to the defendant? In other words, if the government's burdened to prove the proceeds, so you say all we have to do is put on evidence of net and it's up to the defendant at that point to come in and subtract receipts? Your Honor, that's what we submit the procedure should be, and that's consistent with what other circuits have said, in that it would be incredibly burdensome for the government to go in and submit what sort of expenses should be subtracted out. You're saying that ultimately if the defendant can do that, then it's net, right? That would be the standard? You're not saying that it's gross no matter what? Your Honor, we submit that the standard should be gross no matter what. And I think that's consistent with what the vast majority of the circuits have said. But in this case in particular. But it's a little in tension with Honeycutt, isn't it? It's a little what? Sorry. In tension with Honeycutt, don't you think? I don't think so, Your Honor. I mean, Honeycutt talks about tracing proceeds to the particular defendant. I don't think it says anything about netting out, like if the defendant had a business expense with a gambling operation, that he should be able to subtract it as he would on his tax return. I think consistent with the RICO statute, where forfeiture is supposed to be a weapon, it should be gross proceeds and the government should not have the burden of netting out a defendant's business expenses in connection with an illegal activity. And you think we can come to that legal determination despite Liza Industries? Yes, Your Honor. I think that's consistent with what other circuits have said, that it's gross. But not all circuits have weighed in on this. Not all circuits. The seventh goes the other way. The seventh goes the other way. And what other four that come in this way? It's in our brief, Your Honor, what specific circuits have come out. I believe the Eighth Circuit in particular is one that has said it is gross.  Thank you, Your Honor. What about a situation where he doesn't keep it all? He collects $34,700 and passes on all but 10 percent to his boss. Then you would say what? Your Honor, I think that's not the situation we have here. Okay. So it's a hypothetical. I'm asking just what's the answer to that hypothetical. Your Honor, I think under the case law, it should be what passes through his hands, what is traceable to him. And by getting it in his hands, he should be held accountable for it. So that would make him then jointly. And so the person who he hands it to is also going to be responsible for that, right? Within his portion of it, whatever piece he gets. Well, no, all of his portion. There's going to be some double counting then, right? Your Honor, I think that could be right, but it could be joint and severable so that it's not, so that there's not double counting. But here that's not something the court even has to deal with because Judge Forrest was not in possession of any evidence that the proceeds were kicked up to anybody in particular. She was not in possession of any evidence that some sort of business expense should be subtracted here. The only evidence at the hearing was the evidence presented by the government of payments made directly to Mr. Pastore. And as to the point on tracing, I just want to address that for just a moment. Money is fungible, as Judge Forrest recognized, and the fact that a gambler gives a runner money and then maybe the runner first puts it in a bank account and then later goes and withdraws from another account to pay Pastore, that's not something that should matter here. The point is that Steven Pastore only got these payments because he was a bookkeeper in the gambling operation, and the runners were paying him as part of the gambling operation. They weren't paying him for personal reasons. They weren't paying him out of the goodness of their heart. They were paying him directly in connection with the gambling operation. So unless there are any other questions, we submit the court should have. The other question about the judge misinterpreting that he was a soldier in the family, that that just goes to the 2-year sentence, and that all appeals were waived on that score? That's correct, Your Honor, and the judge expressly said in the transcript that she was not relying on that in deciding his sentence. But there's a waiver argument here that you're making. There is a waiver argument. That has absolutely been waived by the plea agreement. Thank you, Ms. Estes. Ms. Shevitz, you've got three minutes. Three, right? Three minutes? Three minutes, yeah. Oh, wait. I'm sorry. We have one for Mr. Anderson. Oh, I'm sorry. That's my fault. I called Ms. Shevitz, but Mr. Anderson's got a minute first, unless you want to switch the order. Thank you. Sorry. Thank you, Your Honors. With respect to the verdict form relating to Count 7, the government is correct, and I had obviously confused that with our arguments and with the facts relating to all of the racketeering acts on appeal. But it doesn't change the outcome with respect to Count 7, because if you look at the cases, not just one case, but all the cases we cited at page 48 and 49 and footnote 11 of our principal brief on appeal, which the government did not provide any really substantive response to in their response or here. Under New York law, which this Court looks to in determining whether crime qualifies as a crime of violence, those crimes can be committed without the use of any force whatsoever, and so it still doesn't satisfy the force clause. But government cites a New York case saying there's no such thing as attempted felony murder. That's correct. And we also cited a case, I believe it's in footnote 11 on page 49 of our principal brief, which indicates that an attempt at murder itself under New York law can be considered a violent act whatsoever in the use of force or even threatened force without the victim even knowing. You correct me if I'm wrong, but I thought there was case law saying that one measures not the use of force by the defendant, but whether force was used, and that by definition that by definition anybody who is assaulted or murdered in some way is the recipient of force by poison, by whatever other methods it might be. Well, there's a... By standing by and watching, letting a person walk into a manhole and not warning them, all of that. Well, we see that there's a distinction between direct and indirect uses of force, which is where the poison hypothetical will often come in, and acts versus omissions, and omissions are a way that these kinds of crimes can be committed under New York State law, and there are several cases before this Court right now which deal with that distinction. This Court has yet to decide. And so I don't think that that's a settled issue of laws to whether an omission, which is a way that a murder can be committed under New York laws in the cases that we cited, necessarily qualifies as a use of force. Will this be affected by the robbery and assault cases that are pending? The assault cases, I believe it will be affected by those because those do, the New York State law assault cases, is that what you're referring to? Yeah. Yes, because those are also the distinctions between omissions and acts. Robbery, I think, is a different thing because that we have a line, a queue of cases that are. Correct. Lined up here. Yes. Some of which have been addressed and some haven't. Right. And so what I'm just wondering is whether this appeal needs to wait in terms of any decision on those cases being decided. I believe, yeah, if this court decides either way that an omission can be a use of force, then that will absolutely affect our arguments with respect to attempted murder under New York law. Did you have a question? No, I got it. All right. So it seems then now that the bottom line is if attempted murder is a crime of violence, then that's the end of the game, right? With respect to count seven, yes. Yeah. Okay. All right. Thank you, Mr. Anderson. Now, Ms. Chivitz. The issue is whether unchallengeable evidence like the government used here is sufficient to prove that the runners specifically made payments. When you say unchallengeable, what do you mean? I mean we challenged the evidence in a proper government exhibit document 703. The government's, quote, North Star document is exhibit is document 702. We wrote a challenge to all of that that was credibly disputing the allegations that should have warranted a hearing. What would the hearing have looked like? I mean, they were relying, the government was relying principally on wiretaps and the wiretaps. There was no question about the authenticity or the admissibility of them, right? We did not dispute the authenticity. So these guys, these runners, who you have to read their comments because they were all over the place, said what they said. That's what we said. They said what they said. Okay. But they didn't mean what they meant is what we wanted to challenge. And our objections, yes. Well, they didn't mean what the government is arguing that they meant. Yes. They didn't show that a payment was made. At one of these, the 60,000 issue, Judge Forrest accepted evidence that because Sokol told an unidentified male on a wiretap about a meeting with Pasteur, which may or may not have happened, and claimed to the unidentified person he, quote, gave him $34,700, which was $10,000 short. Okay. Now, that was not corroborated at all, whatever that means, who the him is. Sokol later testified, told the unidentified person that, quote, Pasteur thinks that I made like $60,000. There is also evidence in the record, which was in the government's enterprise evidence, that in their brief, in our brief, reply brief page 20, that says that the runners paid Ellis after Ellis went to jail for his share of the earnings. That's the government letter. I don't have the number here, but it's quoted at page 20 of our reply brief. So Judge Forrest had, in that government enterprise letter, predated these hearings completely by month. So Judge Forrest knew that there was evidence that even though Ryan Ellis went to jail and Pasteur interfaced with the runners, there were people paying Ryan Ellis. So since nobody saw a transfer of funds, then it is equally, it is not equally, it's more likely that he was talking about numbers if they met. There was no showing of any money transferring hands. There was no observations of an envelope passing hands. So they talked to each other. We don't say they didn't meet. So Pasteur talked about whatever was due when somebody paid Ryan Ellis. There was no evidence that Stephen Pasteur got any money in his hands, much less proceeds that emanated from a better because it went through runners who dispersed it somewhere else before they made payments. I also have in the brief evidence that Sokol, I think it was Sokol or maybe Sawalsky, he told bettors to put money into a specific bank account. Then you could trace it. And I know that tracing is still going on. And as I said, this article shows that it must. In your recent case, Judge Walker, Mark Goldberg, the Court found that proceeds of the scheme were funneled into a bank account from which a cashier's check originated. So you required tracing, then, from the scheme to the one way. While tracing. It's a pretty good way. It's a pretty good way. Traceable proceeds is what the statute requires. It's 100 percent required. I mean, can a judge reasonably infer facts based upon the evidence that the judge has, as opposed to a specific, you know, having an accountant come in and say, these are the bank records? Well, that goes to tracing, not to receipt of the funds. And the test is a preponderance, right? The test? Well, I don't agree with that. I think the test should be for forfeiture. I think Southern Union should control. I've asked for the Court to consider this, consider this en banc, because the case should be controlled by, and this type of hearing should be controlled by Southern Union, because without findings by the judge, by a judge, by findings by a jury, the forfeiture amount is zero. So any fact found by a judge is going to increase the sentence. And I believe that the Court should look at this again and find that Southern Union controls. Libretti didn't really say it, that they were considering waivability and not whether the jury trial, beyond a reasonable doubt, should apply after Apprendi and after Southern Union. And the Court should look at this again. But even by preponderance, there's no money that went into his hands. The government claimed it was going to show envelopes. Why is there any reason to excuse the government from its burden of any kind whatsoever? Now, why the why I said that Judge Forrest relied on the organized crime status, why in the world would she not have let him stay out to spend his 30th anniversary with his wife an extra two weeks, or say she was going to remand this man, if the government had asked? He was, probation recommended a lower sentence of 6 months. So what was in her head to cause this animus? No, I'm not going to let you stay out for your autistic son's 21st birthday. No, I'm not going to let you stay out for your anniversary. I would have remanded you. And there's a finding that she didn't say she was not going to rely on. She said she was going to rely on it as important background and did not let my client contest the most serious charge in this case. Okay. Thank you very much. We'll reserve.